UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA AULT, | : | Case No. 1:06cv1113 |
| Plaintiff, | : | JUDGE KATHLEEN O'MALLEY |
| v. | : | |
| MEDINA MEDICAL INVESTORS. LLC, D/B/A LIFE CARE CENTER OF MEDINA, | : | **ORDER** |
| Defendants. | : | |

Before the Court is a *Motion to Dismiss* (Doc. 6) filed by Defendant Medina Medical Investors, LLC d/b/a Life Care Center of Medina ("Medina Medical" or "Defendant"). Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant seeks to dismiss four of the five counts asserted by Plaintiff Patricia Ault ("Ault" or "Plaintiff"). Specifically, Defendant seeks to dismiss Count One (Wrongful Discharge), Count Three (Negligent Infliction of Emotional Distress), Count Four (Intentional Infliction of Emotional Distress), and Count Five (Negligence).[1] For the reasons set forth below, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted for each of those four Counts. The Court, therefore, **GRANTS** Defendant's Motion to Dismiss is and **DISMISSES** Counts One, Three, Four, and Five.[2]

---

[1] The only count brought by Plaintiff that is not the subject of the present motion is Count Two (Unlawful Discrimination under Ohio Revised Code § 4112.02).

[2] The action is properly before the Court on diversity grounds, and remains so despite this Order, though no claim arises under federal law.

**I.     BACKGROUND**

The following facts are taken from Plaintiff's complaint and are accepted as true, as they must be in the context of a Rule 12(b)(6) motion. Plaintiff worked for Defendant from April 2000 until November 2004. Initially, Plaintiff was hired as a receptionist, but she was transferred to a payroll position in 2001. Defendant promoted Plaintiff's sister to a supervisory position over Plaintiff in 2001. Defendant supplied its employees with an Employee Manual which provided that Defendant would not terminate an employee without having given two warnings prior to termination, and that an employee would not be terminated except for violation of the rules contained in the manual.

In April 2001, Plaintiff began to suffer from various health issues. Plaintiff was diagnosed with cancer in July 2003 and took a leave of absence from work under the Family and Medical Leave Act ("FMLA") from July 2003 to December 2003 due to cancer-related surgery and treatment. Plaintiff missed work throughout 2004 due to kidney problems, bone disease, knee problems, and gall bladder surgery.

In June 2004 Defendant relocated Plaintiff's work station to a more remote location, which required a great amount of walking. On November 19, 2004, Defendant terminated Plaintiff, stating that the termination was necessary in order to comply with Defendant's anti-nepotism policy, which prohibited situations where, as in this case, an employee is supervised by a relative.

On May 4, 2006, Plaintiff filed a Complaint against Defendant, asserting five counts. Thereafter, on May 25, 2006, Defendants filed a Motion to Dismiss Count One and Counts Three through Five. Plaintiff filed a Brief in Opposition to Defendant's Motion to Dismiss on July 14, 2006 (Doc. 13), and Defendant filed its Reply to Plaintiff's Opposition Brief on July 25, 2006 (Doc.

14-1). Accordingly, this matter is ripe for consideration.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a claim for failure to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) is directed solely at the complaint itself. *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983) (citing *Sims v. Mercy Hospital of Monore*, 451 F.2d 171, 173 (6th Cir. 1971)). When evaluating a complaint in light of a motion to dismiss, the Court must accept all of the plaintiff's allegations as true and resolve every doubt in the plaintiff's favor. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir. 1990) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## III. DISCUSSION

### A. COUNT ONE: WRONGFUL DISCHARGE

Plaintiff first asserts a common law claim for wrongful discharge. In this case, Plaintiff does not dispute that she was an at-will employee. Traditionally, Ohio law has followed a common law employment at-will doctrine in which an employer could terminate the employment of a worker "at will for any cause, at any time whatsoever, even if done in gross or reckless disregard of an employee's rights." *Painter v. Graley*, 70 Ohio St.3d 377, 382 (1994) (quotations and citations omitted). The Ohio Supreme Court has recognized two exceptions to the employment-at-will

3

doctrine: (1) a discharge in breach of an implied contract or a promise enforceable under the doctrine of promissory estoppel, *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100 (1985); and (2) a discharge in violation of public policy, *Greeley v. Miami Valley Maintenance Contractors Inc.*, 49 Ohio St.3d 228 (1990).  In this case, Plaintiff alleges in her Complaint that she was wrongfully discharged based on the doctrine of promissory estoppel, but there is nothing in the Complaint that refers to a violation of public policy.  In Plaintiff's opposition to Defendant's motion to dismiss, however, Plaintiff does present an argument that her discharge was in violation of public policy.

For the reasons explained below, even if the Court considers both of Plaintiff's wrongful discharge assertions, each must fail.  Plaintiff does not assert a sufficient basis to support a claim based on promissory estoppel, nor can Plaintiff assert a common law claim for wrongful discharge based on a violation of public policy when she is also asserting a statutory action for discriminatory practices encompassing the same public policy.

### 1. Promissory Estoppel

Plaintiff fails to assert facts sufficient to fulfill the necessary elements of a claim for wrongful discharge based on promissory estoppel.  In Ohio, a promissory estoppel claim consists of the following elements "(1) a promise, clear and unambiguous in its terms; (2) [] reliance upon the promise; (3) [] reliance was reasonable and foreseeable; (4) [plaintiff was] injured by [her] reliance." *Hale v. Volunteers of America*, 158 Ohio App. 3d 415, 429 (Ohio Ct. App. 2004).  Here, Plaintiff claims that Defendant, through its Employee Manual, made representations that Defendant would not terminate an employee without having provided two warnings prior to termination.  Plaintiff alleges that these representations amounted to a promise of future employment and that she relied to her detriment upon that promise.

4

First, it should be noted that the alleged promises made in the Employee Manual do not even relate to duration of employment; they relate only to the company's procedure for termination. Ohio courts have consistently held that a claim for promissory estoppel in the wrongful discharge context must be based on "a clear and unambiguous promise of continued employment <u>for a specific period</u> . . ." *Daup v. Tower Cellular, Inc.*, 136 Ohio App.3d 555, 563 (Ohio Ct. App. 2000) (finding that representations by employer were insufficient as a matter of law to establish an implied contract of continued employment where the statements referred to the "big picture" in the future but "did not promise employment for a specific duration") (*quoting Corradi v. Soclof*, 1995 WL 322311, at *6 (Ohio Ct. App. May 25, 1995)) (emphasis added). Because the alleged promises do not even relate to a duration of employment, but only to a procedure for termination, they cannot form the basis of a promissory estoppel claim in this context.

Even if Defendant's representations did amount to a promise of continued employment, Plaintiff fails to allege sufficient facts to show that she detrimentally relied upon Defendant's promise. For example, Plaintiff does not allege that she would have sought employment elsewhere or that she actually turned down employment opportunities in reliance on Defendant's "promise." Ohio courts require these types of allegations, and perhaps even more, to demonstrate detrimental reliance. *See Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108 (Ohio 1991) ("[M]erely turning down other employment inquiries does not present a jury question of substantial detrimental reliance."); *Eagleye v. TRW*, 1994 WL 50671, at *4 (Ohio Ct. App. Feb 17, 1994) ("[A] plaintiff must establish that he turned down other employment in reliance on a 'promise.'") (citations omitted); *O'Hare v. North Central Local School Dist. Bd. of Educ.*, 1988 WL 93215, at *4 (Ohio Ct. App. Sept. 7, 1988) ("O'Hare's bare assertion that he would have sought employment elsewhere

5

is insufficient to show detrimental reliance on the Board's 'promise.'"). Such a requirement is reasonable, of course, because a person who simply continued to work could make the same claim as someone who actually relied on a promise by not seeking out alternative employment. *Nilavar v. Osborn*, 127 Ohio App.3d 1, 18 (Ohio Ct. App. 1998). "[A]n at-will employee who claims reliance in not looking for other work cannot distinguish himself from one who merely continues working normally." *Id*. As such, Plaintiff's claim for wrongful discharge on the doctrine of promissory estoppel must fail.

### 2. Public Policy

Plaintiff, in her opposition brief (but not her Complaint), also alleges that Defendant is liable for wrongful discharge in violation of public policy. It is axiomatic that a plaintiff cannot add new claims to her complaint in an opposition to a motion to dismiss and, therefore, this claim could be rejected on that ground alone. Even if this claim had been properly raised, however, Plaintiff has still not stated a sufficient claim for wrongful discharge in violation of public policy.

The public policy exception to the employment at-will doctrine was announced by the Ohio Supreme Court in *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228 (1990). Pursuant to *Greeley*, "a discharged employee has a private cause of action sounding in tort for wrongful discharge where his or her discharge is in contravention of a 'sufficiently clear public policy.'" *Painter v. Graley*, 70 Ohio St.3d 377 (citing *Greeley*).

The Supreme Court of Ohio set forth the following elements for a *Greeley* claim:

1. That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

2. That dismissing employees under circumstances like those involved in the

> plaintiff's dismissal would jeopardize the public policy articulated in one or more such provisions (the *jeopardy* element).
>
> 3. That Plaintiff's dismissal was motivated by conduct related to that public policy (the *causation* element).
>
> 4. That the employer lacked an overriding legitimate business justification for the dismissal (the *overriding justification* element).

*Id.* at 384. The Ohio Supreme Court has stated that the second element - the jeopardy element - will not be satisfied if there already exists a statutory remedy to protect the articulated public policy. *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 244 (Ohio 2002) ("Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests.")

In this case, Plaintiff identifies O.R.C. § 4112.02 as the source of the public policy that her discharge violated. The availability of adequate remedies provided in O.R.C. § 4112, however, precludes Plaintiff from bringing a common law wrongful discharge claim in violation of the public policy manifested in that statute. Indeed, Plaintiff also asserts a claim for disability discrimination under O.R.C. § 4112.02, which, if she is successful, would provide Plaintiff with remedies adequate to protect the public policy articulated in Chapter 4112.

It is true that Ohio law may be somewhat unsettled as to whether a *Greeley* claim may be brought in addition to a state law <u>age</u> discrimination claim under O.R.C. § 4112.02, *see Livingston v. Hillside Rehab. Hosp.*, 79 Ohio St.3d 249 (1997) (reversing, without reasoning, the decision of an appellate court, which held that a plaintiff could not base a wrongful discharge claim on public policy underlying a state statutory age discrimination claim); *Jones v. Goodyear Tire & Rubber Co.*, 2004 WL 1197209, at *5 (Ohio Ct. App.-9 June 2, 2004) (citing *Livingston* for the proposition that

7

"Ohio law does recognize common law *Greeley* claims based on age discrimination"). More recent cases, however, have limited the applicability of *Greeley* claims. *See Wiles*, 96 Ohio St.3d at 246 (decided by the Ohio Supreme Court five years after *Livingston*, holding that the remedy provided under the federal Family and Medical Leave Act was adequate, and, thus, precluded resort to an additional state common law public policy claim); *Gessner v. City of Union*, 159 Ohio App.3d 43, 49 (Ohio Ct. App. 2004) (noting that the Ohio Supreme Court "appears to have changed directions since the decision[ ] in . . . *Livingston*.")

Indeed, although it appears that the Ohio Supreme Court has not had an opportunity decide whether a disability discrimination claim under O.R.C. § 4112.02 precludes a *Greeley* claim, at least one Ohio appellate court has considered the issue and has refused to allow a separate claim for wrongful discharge in violation of the public policy against disability discrimination. *See Barlowe v. AAA Inter. Driving School, Inc.*, 2003 WL 22429543, at *7-8 (Ohio App. Ct. Oct. 24, 2003). In that case, the court applied the reasoning of *Wiles* and concluded that "the remedies provided by R.C. 4112.99[3] provide broad relief which is sufficiently comprehensive to vindicate the policy goals set forth in that statute." *Id.* at *8. This Court agrees that the reasoning of *Wiles* applies to a state law claim for disability discrimination and, therefore, finds that Plaintiff in this case cannot state a claim for wrongful discharge in violation of public policy. That claim, therefore, even if considered, must be dismissed.

---

[3] O.R.C. § 4112.99 provides the remedies for violation of a Chapter 4112.

## B. COUNT THREE: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiff next asserts a claim for negligent infliction of emotional distress. In order to adequately allege such a claim, Plaintiff must assert that Defendant negligently acted in an outrageous manner, and, as a direct and proximate result of Defendant's negligent conduct, Plaintiff suffered and continues to suffer from severe emotional distress. Plaintiff's claim for negligent infliction of emotional distress must fail.

A cause of action for negligent infliction of emotional distress is only supported in very narrow circumstances, and Ohio does not recognize this cause of action in the employment context. *Tschantz v. Ferguson*, 97 Ohio App.3d 693, 714 (Ohio Ct. App. 1994) ("Ohio courts do not recognize a separate tort for negligent infliction of emotional distress in the employment context.") Because Plaintiff was an at-will employee in an at-will employment relationship with Defendant, she cannot assert a claim of, or be granted relief for, negligent infliction of emotional distress. Indeed, Plaintiff does not attempt to argue otherwise in her opposition brief, only addressing intentional infliction of emotional distress.

## C. COUNT FOUR: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff also argues that Defendant intentionally acted in an outrageous manner and knowingly caused Plaintiff to suffer serious emotional distress when Defendant moved Plaintiff to a remote work location that required a lot of walking despite knowing of Plaintiff's bone disease.

A cause of action for intentional infliction of emotional distress has four elements:

(1) [the defendant] either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) [the defendant's] conduct was so extreme and outrageous so as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community'. . . ; (3) [the defendant's] actions were the proximate cause of the plaintiff's

9

> psychic injury; and (4) [] the mental anguish suffered by the plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it . . . .'

*Pyle v. Pyle*, 11 Ohio App.3d 31, 34 (Ohio Ct. App. 1983) (citations omitted).  In this case, Plaintiff's claim fails because she cannot satisfy the second and fourth elements.

First, Plaintiff does not sufficiently allege that Defendant's actions constituted extreme and outrageous behavior.  Requiring an employee to do "a great amount of walking" in the performance of the employee's work duties, even if the employer is aware of the employee's physical impairments, is not "beyond all possible bounds of decency" and "utterly intolerable," as a matter of law.  Although, if proven, that might be a relevant factor to Plaintiff's claim for disability discrimination under O.R.C. § 4112, it is not sufficient to support a claim for intentional infliction of emotional distress.

Plaintiff's claim also fails because she does not fulfill the fourth element of an intentional infliction of emotional distress claim.  Plaintiff must adequately allege that she suffers from serious mental anguish that no reasonable person could be expected to endure.  Plaintiff's bare assertion that she "has suffered and continues to suffer severe emotional distress," (Complaint at ¶ 37), without anything more, does not satisfy this element.  As such, Plaintiff has failed to adequately allege the elements of a claim for intentional infliction of emotional distress, and her claim must fail.

### D. COUNT FIVE: NEGLIGENCE

Finally, Plaintiff asserts that Defendant was negligent because it breached a duty to Plaintiff to follow the policies outlined in the Employee Manual pertaining to termination procedures and encouraging transfers to accommodate employees.  Although unclear, it appears that Plaintiff asserts that Defendant owed an obligation to Plaintiff that arose from the policies contained in the Employee

10

Manual.  Plaintiff has not cited any law that would support a finding that an employer owes an employee a duty in this situation.  Absent such a duty, Plaintiff cannot maintain a claim for negligence. Otherwise, any duty or obligation arising from the Employee Manual could only be a contractual one.  To the extent that Plaintiff alleges breach of an implied contract in this count, it is duplicative of Count One and fails for the same reasons.  To the extent that Plaintiff alleges that the Employee Manual represented a contract between the two parties, there is no claim for breach of contract in the Complaint.

Generally, "[i]tems such as employee handbooks, company policy or oral representations . . . will not serve to alter the terms for discharge from the general at-will situation of discharge for any reason unless the parties have a 'meeting of the minds' that said items are to be considered valid contracts altering the terms for discharge."  *Lowry-Greene v. Brighton Hotel Corp.*, 1992 WL 205077, at *5 (Ohio Ct. App. Aug. 20, 1992) (*quoting Turner v. SPS Techs., Inc.*, 1987 WL 11967, at *2 (Ohio Ct. App. June 4, 1987)).  "Where such mutual assent is lacking, the handbook or other supplementary materials merely constitute a unilateral statement of company rules and regulations." *Id.* (*quoting Cohen & Co. v. Messina*, 24 Ohio App.3d 22, 24 (Ohio Ct. App. April 8, 1985)).  In this case, Plaintiff neither alleges that the Employee Manual was a binding contract nor does she assert a claim for breach of contract.  Absent any such assertion, it appears that the Employee Manual in this case was simply a "unilateral statement of company rules and regulations," not an instrument that imposed legal obligations on Defendant.

In addition, to the extent that Count Five is a claim for negligent termination as opposed to negligence in not following company policy or breach of contract, such a claim is duplicative of a claim for wrongful termination and must fail.  Under any analysis, Count Five must be dismissed.

11

IV.     CONCLUSION

For the reasons articulated above, Plaintiff fails to state a claim upon which relief may be granted on Counts One, Three, Four, and Five.  Accordingly, Defendant's Motion to Dismiss Counts One, Three, Four, and Five is **GRANTED**, and those Counts are **DISMISSED**.  Only Count Two (Unlawful Discrimination under O.R.C. § 4112.02), the Count that appears to best address the conduct at issue in this case, remains.

**IT IS SO ORDERED.**

>                            s/Kathleen M. O'Malley
>                            **KATHLEEN McDONALD O'MALLEY**
>                            **UNITED STATES DISTRICT JUDGE**

**Dated: January 8, 2007**