UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA AULT, | ) | Case No. 1:06CV1113 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| MEDINA MEDICAL | ) | |
| INVESTORS, LLC d/b/a LIFE | ) | |
| CENTER OF MEDINA, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Patricia Ault (plaintiff) filed the present action against defendant Medina Medical Investors, LLC d/b/a Life Center of Medina (defendant) challenging her discharge from defendant's employment as unlawful disability discrimination in violation of Ohio Rev. Code § 4112 and Ohio common law (Docket No. 1, Ex. 1, Complaint).

Pursuant to Fed. R. Civ. P. 56(c), defendant has sought dismissal of plaintiff's disability discrimination claim under §4112 (Docket No. 19). Plaintiff opposes the motion (Docket No. 21), and defendant has filed a reply (Docket No. 22). For the reasons that follow, defendant's summary judgment motion is **GRANTED**.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts surrounding the beginning of plaintiff's tenure with defendant

are not in dispute. On April 24, 2000, defendant hired plaintiff as a receptionist. Sometime in April, 2001, Jim Griffiths, then Executive Director, promoted plaintiff to payroll associate.

When plaintiff's sister, Kelly Kane, was promoted to the position of Office Manager, plaintiff reported to Ms. Kane (Docket No. 19, Ex. 1, Deposition of Patricia Ault at 14; Docket No. 21, Ex. A, Deposition of Kelly Kane at 8). According to defendant's employee handbook, employees were not permitted to be supervised by family members. Specifically, the anti-nepotism policy provided:

> The facility is happy to receive employment applications from relatives of associates; however, associates may not be supervised by anyone to whom they are related, by blood or marriage.

(Docket No. 19, Ex. 2, Declaration of John Hennemyre, Ex. A, Employment Guidelines Handbook at 20). The parties agree that Ms. Kane's supervision of plaintiff violated defendant's anti-nepotism policy.

In September 2003, plaintiff was diagnosed with uterine cancer. Plaintiff took leave under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.*, until December 2003 for surgery and radiation treatment. Throughout the following year, plaintiff was absent from work due to other medical conditions including, but not limited to, gallbladder surgery, osteoarthritis, bursitis, kidney stones, heel spurs, and chronic knee and back pain (Docket No. 21, Ex. C, Affidavit of Patricia Ault at ¶ 12).

The events surrounding the last year of plaintiff's employment with defendant are more hotly contested. In Spring 2004, defendant hired Michael Milbrandt to serve as its new Executive Director. According to defendant, while Milbrandt was attending a training seminar in the Fall of 2004, he learned of the existence of the anti-nepotism policy in the employee handbook (Docket No. 19, Ex. 3, Deposition of Michael Milbrandt at 5, 9). Aware that

2

two supervisor-employee relationships at his facility may be in violation of the anti-nepotism policy, Milbrandt approached Jon Hennemyre, defendant's Regional Vice President, to inform him of the two suspected violations (Milbrandt Dep. at 9; Hennemyre Decl. at ¶ 6). Milbrandt explained that plaintiff was supervised by her sister, and that a second employee, Michael Walker, was supervised by his father, Steve Walker. Hennemyre and Milbrandt agreed that both employment arrangements violated the anti-nepotism policy, and that both plaintiff and Michael Walker would have to be discharged.[1] Since it was close to the holiday seasons, Hennemyre and Milbrandt decided to wait until January 1, 2005 to finalize the discharges (Milbrandt Dep. at 9-10).

On November 19, 2004, Milbrandt and Kane informed plaintiff that she was being discharged because her employment violated the anti-nepotism policy (Complaint at ¶ 11; Milbrandt Dep. at 11). Milbrandt also told plaintiff that she would be given until January 1, 2005 to find other employment, and asked plaintiff not to speak to other employees about her pending termination until he could speak to all who were affected by the enforcement of the policy (Milbrandt Dep. at 9-10; Ault Dep. at 55). The terms of Michael Walker's termination were set forth in a similar fashion (Milbrandt Dep. at 12).

Plaintiff concedes that, contrary to Milbrandt's wishes, she spoke to other employees about her anticipated discharge (Ault Dep. at 55). When Milbrandt approached her regarding her lack of discretion, plaintiff voluntarily resigned (Ault Dep. at 26-27). While her end date is disputed, employment records show that plaintiff's last day of employment with defendant was November 24, 2004 (Docket No. 19, Ex. 4, Stephen Wolf Declaration at ¶ 5, Ex. A).

---

[1] According to defendant, plaintiff was selected over her sister for termination because her sister was a more productive employee and because it was easier to replace a subordinate than a supervisor (Hennemyre Decl. at ¶ 7).

3

Plaintiff's account of her final year in defendant's employ casts a much different light on the ultimate decision to discharge her. Plaintiff maintains that Kelly Kane, her sister, was not her supervisor at the time of her termination. Rather, she claims that another woman, Kelly Johnson, served in that role, and that the anti-nepotism policy was just a "smokescreen" to hide defendant's unlawful disability discrimination" (Docket No. 21 at 6). In fact, it is plaintiff's contention that it was not until she "began seeking significant medical treatment throughout 2004 that she began to hear rumors that management was trying to get her to quit." *Id.* at 5. According to plaintiff, she "has always known there was an underhanded motive behind her termination;" namely, defendant's desire to avoid paying for her mounting medical bills. *Id.* at 6.

Plaintiff initially filed the present action in the Court of Common Pleas, Medina County, Ohio on March 30, 2006. Defendant removed the action to this Court on May 4, 2006. In addition to the claim of disability discrimination under § 4112, plaintiff raised common law claims of wrongful discharge, negligence, and intentional infliction of emotional distress. The common law causes of action were dismissed by the Court in a decision dated January 8, 2006. [2] Only the § 4112 claim, Count Two of the Complaint, remains. Defendant seeks summary dismissal of this remaining claim.

## II.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

---

[2] This action was originally assigned to the docket of the Honorable Kathleen M. O'Malley. The matter was reassigned to the docket of the Honorable Sara Lioi on March 23, 2007.

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the   matters stated therein . . . .The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to

make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), *citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

Applying the above principles to the present case, it is clear that Fed. R. Civ. P. 56(c) assigns the initial burden of proof to defendant. If the Court finds that defendant has satisfied this burden, however, plaintiff will be obligated to "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky DOT*, 53 F.3d 146, 149 (6th Cir. 1995). Plaintiff will not be permitted to rest upon the allegations in her Complaint. Rather, she will have to come forward with affirmative evidence in support of each and every element of her claim of disability discrimination. *Id.* at 150. If plaintiff is unable to offer affirmative evidence which controverts defendant's motion or its assertions of fact, evidence submitted by defendant will be taken as true and defendant shall be entitled to summary judgment. *See Kemper v. American Broadcasting Co.*, 365 F. Supp. 1275, 1277 (S.D. Ohio 1973).

## III.

## **LAW AND ARGUMENT**

In her sole remaining cause of action, plaintiff alleges that her discharge

was the result of disability discrimination in violation of Ohio statutory law (Complaint at ¶¶ 24-31). Specifically, Ohio Rev. Code § 4112.02 provides, in part:

> It shall be an unlawful discriminatory practice: (A) for any employer, because of the…disability…of any person to discharge without just cause, to refuse to hire, or otherwise discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

The Ohio Supreme Court recognized in *Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Com.*, 66 Ohio St. 2d 192, 197 (1981), that *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), sets forth the formula courts should rely upon in evaluating claims of discrimination under Ohio Rev. Code § 4112.02. *See Detzel v. Wellman*, 141 Ohio App. 3d 474 (Ohio Ct. App., Ottawa County 2001). The burden of proof established in *McDonnell Douglas*, and later clarified by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981), is divided into three stages.

At the first stage, the plaintiff must prove a *prima facie* case of discrimination. *Burdine*, 450 U.S. at 252-53. If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id., quoting McDonnell Douglas*, 411 U.S. at 804. *See Plumbers*, 66 Ohio St. 2d at 197. If defendant meets this burden, the final stage requires the plaintiff to prove that the proffered reason was merely a pretext for unlawful discrimination. *Burdine,* 450 U.S. at 253, *citing McDonnell Douglas*, 411 U.S. at 804. Pretext is established by a direct showing that "a discriminatory reason more likely motivated the employer or by an indirect showing that the employer's explanation is not credible." *Burdine,* 450 U.S. at 256. *See Kline v. TVA*, 128 F.3d 337, 342-43 (6th Cir. 1997).

It is well settled that to establish a *prima facie* case of disability

discrimination under Ohio Rev. Code § 4112.02, plaintiff must prove that: (1) she has a disability; (2) adverse action was taken by defendant, at least in part, because of her disability; and (3) even though she had a disability, she could have safely and substantially performed the essential functions of the job in question with or without reasonable accommodation. *Hood v. Diamond Prods.*, 74 Ohio St. 3d 298, 302 (1996); *Hazlett v. Martin Chevrolet, Inc.,* 25 Ohio St. 3d 279, 281 (1986).

Defendant maintains that it is entitled to summary judgment because plaintiff is unable to establish even a *prima facie* case of disability. For purposes of its motion, defendant assumes that plaintiff's multiple alleged medical conditions satisfy the first prong of the test; namely, that she is disabled. In ruling on defendant's motion, the Court will also assume that plaintiff has met her burden with respect to the requirement to demonstrate a recognized disability.[3]

Defendant argues, however, that plaintiff cannot satisfy the last two prongs of her *prima facie* case. With respect to the third prong, defendant notes that plaintiff did not request a reasonable accommodation, and that no possible accommodation would have cured the fact that she was being supervised by her sister, in violation of defendant's anti-nepotism

---

[3]This treatment of the first prong of plaintiff's *prima facie* test should in no way be interpreted as a determination by the Court that plaintiff is, indeed, "disabled," as that term is defined under either Ohio Rev. Code § 4112.02 or the Americans with Disability Act (ADA), 42 U.S.C. § 12102(2)(A).  In fact, the Court observes that there is very little in the record to support a finding that plaintiff is, or was perceived as, disabled. Plaintiff notes that when she was relocated to a position that required a great deal of walking, she "persevered, albeit somewhat slower" because of her knee problems (Docket No. 21 at 2 and 5). A medical condition that causes an individual to walk more slowly, however, does not rise to the level of a disability. *See Kelly v. Drexel Univ.*, 94 F.3d 102 (3rd Cir. 1996) (moderate pain causing the plaintiff to walk more slowly did not establish a disability under the ADA because it did not show that it substantially limited the major life activity of walking). Similarly, with respect to the multiple medical procedures for which she missed work in 2004, plaintiff offers no proof that the conditions for which they were performed were anything other than temporary, non-chronic impairments with no long-term impairment, which likewise would not rise to the level of a disability. *See Green v. Rosemont Indus.*, 5 F. Supp. 2d 568, 572 (S.D. Ohio 1998). As for a perception that she was disabled, the only possible record support would be plaintiff's representation that she began using a cane in 2004, that she took time off work for medical treatment, and that Mr. Milbrandt's testified that plaintiff was "a little bit slower (Docket No. 21 at 6; Milbrandt Dep. at 21). As will be discussed later in this Memorandum Opinion, Mr. Milbrandt's stray remark was cited by plaintiff out of context, and there is no evidence that plaintiff's use of a cane or her use of medical leave led to any perception of a disability.

policy (Docket No. 19 at 12-13). Plaintiff was not discharged, however, because she unable to perform the essential functions of her job. Rather, defendant insists that the *only* reason for plaintiff's termination was the fact that her continued employment violated its anti-nepotism policy. Plaintiff's familial relationship to her supervisor was not a disability from which she required, or was entitled to, an accommodation. In fact, but for the fact that she was supervised by a relative, it is defendant's position that plaintiff would still be employed by defendant. Consequently, the Court finds that the record supports a finding that plaintiff was able to perform the essential functions of her position with or without a reasonable accommodation.

As for the second prong, it is true that plaintiff suffered an adverse employment action when she was discharged. Defendant argues, however, that the record does not support a finding that the decision to terminate plaintiff was, even in part, motivated by plaintiff's alleged disability. Plaintiff claims that she was discharged because defendant was concerned about the cost of plaintiff's medical bills. However, there is no affirmative evidence that plaintiff's medical bills influenced this adverse employment decision, or that the decision-makers were even aware of plaintiff's medical expenses.

In deposition testimony, plaintiff admitted that she had no evidentiary support for her contention that the cost of her medical care was the true reason for her termination (Ault Dep. at 50, referring to 33-35). She also testified that no employee of defendant ever made any disparaging remarks about her medical expenses or even discussed her medical expenses with her (Ault Dep. at 34-35). Plaintiff was never disciplined because of her use of medical leave, nor was she treated differently because she used her medical benefits (Ault Dep. at 35).

As for the decision-makers, neither Milbrandt nor Hennemyre had any

knowledge of the cost of Ault's medical claims (Docket No. 19, Ex. 5, Matthew Golden Declaration at ¶ 9; Hennemyre Decl. at ¶ 5). Even the staff of the Associate Benefit Trust (ABT), the entity that administers defendant's health care benefits, is not made of aware of the costs of an employee's medical claims until the cost reaches a $75,000 threshold amount. Even then the notification is made for the sole purpose of verifying that the employee is still employed by defendant (Golden Decl. at ¶ 6). Since the ABT staff was not asked to verify plaintiff's status with defendant, plaintiff's medical costs had not reached the threshold level, and even the ABT staff hade no information regarding the cost of plaintiff's medical care (Golden Decl. at ¶ 7).

There is no record evidence that would suggest that anyone in defendant's employ, including those individuals involved in the decision to terminate plaintiff, were aware of plaintiff's medical expenses (Hennemyre Decl. at ¶ 5). The fact that the employer, and particularly the employer's decision-makers, was unaware of plaintiff's medical bills is sufficient to defeat plaintiff's *prima facie* case of disability discrimination. *See e.g., Wesley v. Stanley Door Sys.*, 986 F. Supp. 433 (E. D. Mich. 1997) (part-time employee denied full-time position could not establish a *prima facie* case of discrimination because there was no evidence that the cost of insurance for any of the potential hires was discussed by the decision-makers in arriving at their decision, nor was there any evidence that anyone at the company was aware of plaintiff's spouse's medical expenses); *Thorpe v. Alber's, Inc.*, 922 F. Supp. 84, 87 (E.D. Tenn. 1996) (no *prima facie* case where it had not occurred to decision-maker that the plaintiff's long-term disability benefits might affect the employer's premium costs); *Farmer v. National City Corp.*, 1996 WL 887478, *7 (S.D. Ohio April 5, 1996) (plaintiff fails to demonstrate that she was fired because of her medical expenses where undisputed evidence demonstrated that the employer had no way of knowing the extent of an employee's health care costs).

10

Of course, the Court notes that evaluating this prong of plaintiff's *prima facie* case is problematic for the simple reason that she neglected to present an argument on this subject in opposition to defendant's summary judgment motion. In fact, plaintiff failed to offer any argument at all with respect to her obligation to prove a *prima facie* case of discrimination, and did not even address defendant's contention that such proof could not be found in the record. Rather, plaintiff's brief simply skips right ahead to the issue of pretext. Of course, plaintiff's failure to come forward with any evidence on the second prong of the *prima facie* case analysis is fatal to her claim. Moreover, her failure to meet her burden of establishing a *prima facie* case mandates dismissal of her disability discrimination claim. *See Morvay v. Maghielse Tool & Die Co.*, 708 F.2d 229, 233 (6th Cir. 1983), *cert. denied*, 454 U.S. 1011 (1983). Nonetheless, the Court will continue to the next step of the analysis because, even if plaintiff had established a *prima facie* case of discrimination, summary judgment in favor of defendant would still be appropriate because plaintiff cannot demonstrate that defendant's reason for her discharge was merely a pretext for unlawful disability discrimination.[4]

Assuming plaintiff had established her *prima facie* case, defendant would have been required to proffer a legitimate, non-discriminatory reason for plaintiff's discharge. *See Burdine,* 450 U.S. at 254. The *Burdine* Court emphasized that this burden is merely one of "production" because "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Id* at 253. Defendant easily meets this minimal burden by representing that plaintiff was discharged because her continued employment violated the company's anti-nepotism policy (Docket No. 19 at 14-15). In support of this reason, defendant notes that another employee, Michael Walker, was

---

[4] The Court will address defendant's arguments and evidence relating to its enforcement of the anti-nepotism policy with respect to plaintiff and Michael Walker under the pretext analysis. While defendant offered these arguments and evidence to defeat plaintiff's *prima facie* case, they also go to the ultimate issue of pretext.

also discharged at the same time and for the same reason.

Thus, the burden shifted back to plaintiff to demonstrate that the proffered reason is nothing more than a pretext for unlawful discrimination. *See Burdine*, 450 U.S. at 255. Plaintiff points to three pieces of evidence that she believes demonstrate pretext.

First, plaintiff argues that the anti-nepotism policy was used as a "smokescreen" to hide unlawful disability discrimination. In support of this theory, plaintiff maintains that she was not supervised by her sister, Kelly Kane, at the time of her discharge, but that her real supervisor was Kelly Johnson. According to plaintiff, the fact that plaintiff's employment did not actually violate the anti-nepotism policy demonstrates that it was not the true reason for her discharge. The record simply does not support this contention.

Kane, herself, testified that she became plaintiff's supervisor in May of 2002, and that she was plaintiff's at the time plaintiff resigned in November of 2004[5] (Kane Dep. at 8, 10). Moreover, while plaintiff claims that Milbrandt testified in his deposition that Johnson was plaintiff's supervisor at the time of her termination, Milbrandt clearly testified that he temporarily placed Johnson in a supervisory role over plaintiff, but that this arrangement only lasted a few weeks.[6] It is clear that at the time plaintiff voluntarily resigned, she was supervised by her sister, and that this arrangement violated the anti-nepotism policy (Kane Dep. at 10; Milbrandt Dep. at 9). [7]

---

[5] Kane also testified that, as plaintiff's supervisor, she was responsible for evaluating plaintiff and administering plaintiff's performance appraisals (Kane Dep. at 10).
[6] Milbrandt testified that: We did attempt to kind of supervise—shift supervising roles away from Kelly [Kane] and onto Kelly Johnson to—to try and  break up the system. But it just wasn't working because there was too much of a financial aspect to what Trish was doing and there was too much of a history and critical role in the business office and relationship between Chris' role—or, I mean between Trish's role and between Kelly Kane's role; that having Trish report to Kelly Johnson didn't work on a functional basis even though we attempted to try to make that work…Q: How long of a period of time was it that she was the supervisor? A: Maybe four to six weeks. (Milbrandt Dep. at 17-18).
[7] In fact, plaintiff testified that it was Kelly Kane, her sister, and not Kelly Johnson, whom she notified when she made the decision to voluntarily resign (Ault Dep. at 27).

Second, plaintiff suggests that the evidence shows that Milbrandt's real reason for plaintiff's discharge was some "perception" of a disability. Specifically, plaintiff represents in her brief: "When asked why Defendant chose to terminate Plaintiff instead of Kelly Kane, Michael Mibrandt stated Plaintiff "'was somebody who I always felt was a little bit slower.' *See Deposition of Michael Milbrandt pg 21*" (Docket No. 21 at 6). Plaintiff, however, has grossly misrepresented the record. Milbrandt testified that, with respect to plaintiff's productivity, plaintiff was a bit slower than other employees who were more "aggressive" (Milbrandt Dep. at 21-22). This observation was not made in connection with any question regarding the decision to terminate plaintiff. *See Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990) (characterizing a remark unrelated to the decisional process as insufficient to show discrimination based on age); *Smith v. Firestone Tire and Rubber Co.*, 875 F.2d 1325, 1330 (7th Cir. 1989) (concluding that a stray remark in the workplace unrelated to the decisional process is insufficient to show discrimination based on race). Milbrandt, and the other decision-maker, Hennemyre, both consistently stated that the anti-nepotism violation was the only reason for plaintiff's discharge (Milbrandt Dep. at 9; Hennemyre Decl. at ¶ 6). Plaintiff's deceptive representation of the facts cannot manufacture genuine issues of material fact.

Finally, Plaintiff attempts to further advance her theory that the anti-nepotism policy was merely a rouse by claiming that the other employee who was discharged pursuant to the policy, Michael Walker, was "rehired back into their [sic] previous position shortly thereafter" (Docket No. 21 at 6). Plaintiff cites to the deposition of Kelly Kane to support this allegation, but nowhere in her deposition did Ms. Kane indicate that Michael Walker was

rehired or reinstated into his former position.[8] In fact, Ms. Kane confirmed that Michael Walker was discharged along with plaintiff and that he no longer works for defendant (Kane Dep. at 12-13). The fact that another employee with a disability was discharged at the same time as plaintiff and for the same non-discriminatory reason belies plaintiff's pretext argument. *See Farmer*, 1996 WL 8887478 at *7 (the fact that the plaintiff was not singled out for termination in a reduction in force but was terminated along with non-disabled employees negated the plaintiff's claims of disability discrimination and pretext).

## IV.

## CONCLUSION

Ultimately, plaintiff's unsubstantiated belief that her medical care was the underlying reason for her discharge is insufficient to stave off summary judgment. Plaintiff has failed to come forward with affirmative evidence which controverts defendant's motion, and, indeed, has fallen woefully short of offering even a scintilla of evidence to support her suspicions. *See Cox*, 53 F.3d at 149; *Kemper*, 365 F. Supp. at 1277. The fact that a non-disabled employee received the same treatment merely underscores the fact that the termination decision was not motivated by unlawful disability discrimination. *See e.g., Farmer*, 1996 WL 887478 at *7. As such, defendant is entitled to summary judgment.

For all of the foregoing reasons, defendant's motion for summary

---

[8] In her deposition, Ms. Kane does testify that another employee, Travis Blocker, was subsequently hired by defendant and was working in the maintenance department (Kane Dep. at 15). There is no evidence in the record as to what, if any, familial relationship Travis Blocker has with Steven Walker. Of course, Ms. Kane's observation about a different employee does not negate the fact that plaintiff and a similarly-situated non-disabled employee were treated in the same manner.

judgment (Docket No. 19) is **GRANTED**. This case is **DISMISSED**.

      **IT IS SO ORDERED**

Dated: July 9, 2007                                             *s/ Sara Lioi*
                                                        Hon. Sara Lioi
                                                        United States District Judge